**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Chris Long, Individually and as the Personal Representative for the Estate of William Long,<br><br>Plaintiff,<br><br>v.<br><br>Berkeley County Sheriff's Department and Berkeley County,<br><br>Defendants. | **C/A No.: 9:26-cv-01921-SAC-MHC**<br><br>**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION** |

Plaintiff Chris Long, individually and as the duly appointed Personal Representative of the Estate of William Long ("Decedent"), by and through undersigned counsel, respectfully submits these objections to the Report and Recommendation entered September 11, 2026 (ECF No. 14) (the "R&R").

**INTRODUCTION**

A party may file specific written objections to a magistrate judge's recommended disposition of a dispositive motion. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Upon receiving specific objections, the district judge must conduct a de novo determination of those portions of the recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Plaintiff therefore requests de novo review of the R&R's conclusions concerning the § 1983 claim against Berkeley County, the § 1983 claim against the Berkeley County Sheriff's Department, and the resulting recommendation concerning supplemental jurisdiction

Plaintiff's principal issue in the R&R concerns Plaintiff's § 1983 claim against Berkeley County. The R&R recognizes that a municipal policy or custom may be established through an omission, including a failure to train that manifests deliberate indifference. R&R at 8–9. It

nevertheless resolves the claim primarily by applying the separate "persistent and widespread" practice theory and concluding that the absence of alleged comparable incidents defeats the claim. R&R at 9–10. That analysis does not adequately address the omission and failure-to-train theory actually pleaded, including the alleged failure to respond to a known fentanyl risk, failure to provide appropriate medical care, failure to monitor detainees, and failure to maintain and enforce appropriate safety protocols.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), Plaintiff requests de novo review of the portions of the R&R to which these objections are directed and respectfully asks the Court to reject the recommendation that Defendants' Motion to Dismiss be granted.

## OBJECTIONS

### I. THE R&R IMPROPERLY RESOLVES FACT-INTENSIVE QUESTIONS OF DELIBERATE INDIFFERENCE AT THE PLEADING STAGE.

Rule 12 asks whether Plaintiff has plausibly alleged a claim—not whether Plaintiff has already developed the evidence necessary to prove it. At the Rule 12(b)(6) stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. The question is whether those allegations plausibly state a claim for relief. The Court is not yet weighing the evidentiary record or determining whether Plaintiff ultimately can prove deliberate indifference.

Here, the R&R's analysis depends in substantial part upon the absence of evidence or allegations concerning matters that have not yet been explored through discovery, including the existence of comparable incidents, the County's training and supervision practices, its policies and protocols for detainee medical emergencies and monitoring, what County policymakers knew, and whether the County had been placed on notice of risks associated with opioid-related medical

emergencies. Those are precisely the kinds of facts that may be developed through discovery. Plaintiff should not be required, at the outset of litigation, to prove facts that may be uniquely within Defendants' possession before Plaintiff has had an opportunity to obtain them.

*Mullen* involved summary judgment after development of an evidentiary record and therefore does not compel dismissal at this stage. The R&R relies upon *Mullen v. Town of Sunset Beach*, 175 F.4th 466, 472–73 (4th Cir. 2026), for the proposition that deliberate indifference is a demanding standard and ordinarily requires a persistent and widespread pattern. *Mullen*, however, arose in the context of summary judgment, after the parties had developed an evidentiary record. The procedural posture here matters At summary judgment, the court evaluates evidence and determines whether a genuine dispute of material fact exists. Here, by contrast, no discovery has occurred and Plaintiff has not had the opportunity to develop evidence concerning the County's policies, training, procedures, knowledge, prior incidents, or response to opioid-related medical emergencies. Plaintiff respectfully submits that *Mullen* should not be used to convert the Rule 12 inquiry into an evidentiary determination.

The distinction is particularly important because the R&R treats the absence of allegations concerning prior incidents as evidence that no such pattern exists. Before discovery, however, the absence of allegations concerning information uniquely within Defendants' possession should not necessarily be treated as an affirmative factual showing that such information does not exist.

## II. THE R&R CONFLATES DISTINCT ROUTES TO MONELL LIABILITY BY TREATING THE ABSENCE OF A PERSISTENT AND WIDESPREAD PRACTICE AS DISPOSITIVE.

The R&R correctly recognizes that a local government may face § 1983 liability through several different avenues, including (1) an express policy, (2) a final policymaker's decision, (3) an omission such as a failure to properly train officers that manifests deliberate indifference, or a

(4) practice that is sufficiently persistent and widespread to constitute a custom. ECF No. 14 at 9–10. Plaintiff's theory is centered on governmental omissions, including failures concerning training, supervision, safety protocols, detainee monitoring, and medical care. The R&R identifies this omission/failure-to-train theory, but then effectively resolves it by *requiring* allegations of a persistent and widespread pattern.

Plaintiff does not contend that a pattern of prior constitutional violations is never relevant. Rather, Plaintiff submits that the Court should distinguish between a claim based upon a longstanding unconstitutional custom and a claim based upon a municipality's deliberate failure to train, supervise, or implement necessary safeguards in circumstances where the need for such safeguards was sufficiently apparent.

## III. THE COMPLAINT PLAUSIBLY ALLEGES FACTS SUPPORTING A DELIBERATE-INDIFFERENCE THEORY.

The Complaint does not rest on a bare assertion that the County failed to train its employees. It alleges a specific sequence of events bearing directly on the risk allegedly known to Defendants:

1. A Berkeley County deputy encountered Decedent slumped over in an inoperative vehicle and was sufficiently concerned about a medical emergency to summon EMS;
2. EMS determined that Decedent was under the influence of narcotics;
3. The deputy found a substance on Decedent that was later determined to be fentanyl;
4. The Complaint alleges that Defendants therefore had knowledge of Decedent's fentanyl use, abuse, and/or addiction; and
5. Despite those circumstances, Decedent was not taken to an emergency room or other healthcare facility and instead was arrested and transported to the Berkeley County Detention Center.

The Complaint alleges that Defendants failed to ensure Decedent's safety and wellbeing while he was incarcerated. Six days later, Decedent died from a fentanyl overdose while in custody. Taken together, these allegations provide a factual basis from which to infer that Defendants were confronted with a *known and serious opioid-related risk* before Decedent entered the detention facility and that the alleged failures in medical care, monitoring, training, and safety measures thereafter contributed to his death. At the pleading stage, those allegations should be evaluated as a whole rather than separated into isolated omissions.

## IV. THE COMPLAINT PLAUSIBLY ALLEGES AN OBVIOUS NEED FOR TRAINING AND SAFETY PROTOCOLS, AND THE AUTHORITIES RELIED UPON IN THE R&R DO NOT REQUIRE DISMISSAL AT THE PLEADING STAGE.

The R&R's conclusion that Plaintiff has failed to adequately plead deliberate indifference rests largely upon the absence of allegations concerning prior, substantially similar incidents. See ECF No. 14 at 9–10. But that analysis does not fully account for the distinct theory of municipal liability recognized in *City of Canton v. Harris*, 489 U.S. 378 (1989), and its scions. Where the need for more or different training is so *obvious*, and the inadequacy of existing training is so *likely* to result in constitutional violations, a plaintiff may establish deliberate indifference without relying solely upon a pattern of prior violations. See *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 671–72 (4th Cir. 2020.

Here, Plaintiff has alleged facts that plausibly implicate precisely that concern. The Complaint alleges that a Berkeley County deputy encountered Decedent slumped over in the driver's seat of an inoperative vehicle and believed that he was experiencing a medical event. ECF No. 1 ¶¶ 7–8. Emergency medical personnel responded and determined that Decedent was under the influence of narcotics. *Id.* ¶ 9. The deputy then discovered a plastic bag containing a substance that was later determined to be fentanyl. *Id.* ¶ 10. Thus, according to the allegations of the

Complaint, Defendants had actual knowledge that Decedent had recently experienced a narcotics-related medical episode and that fentanyl was involved.

Despite that knowledge, Plaintiff alleges that Defendants did not transport Decedent to an emergency room or other healthcare facility, but instead arrested him and transported him to the Berkeley County Detention Center. *Id.* ¶¶ 11–12. Plaintiff further alleges that Defendants thereafter failed to ensure Decedent's safety and wellbeing while he was incarcerated, including by failing to provide adequate medical care, failing to properly monitor detainees, failing to implement and enforce appropriate safety protocols, failing to properly train and supervise personnel, and failing to keep illegal drugs out of the detention facility. *Id*. ¶¶ 17–19, 23–24. Six days later, Decedent died from a fentanyl overdose while in Defendants' custody. *Id*. ¶ 13.

At the pleading stage, those allegations plausibly raise more than an abstract allegation that the County failed to train its employees. Plaintiff has alleged a specific sequence of events in which County personnel were confronted with an individual exhibiting signs of a narcotics-related medical emergency, were allegedly made aware of fentanyl exposure, nevertheless placed that individual into detention, and then allegedly failed to employ adequate medical, monitoring, and safety measures to address the known risk. The Complaint further alleges that these failures were not merely the product of one employee's conduct, but resulted from deficiencies in the County's training, supervision, policies, procedures, and safety protocols. See ECF No. 1 ¶¶ 17–19, 23–24.

Those allegations are sufficient, at this stage, to permit the reasonable inference that the County's alleged failure to provide appropriate training and safeguards concerning detainees experiencing serious opioid-related medical emergencies *could* constitute deliberate indifference. Whether discovery ultimately establishes that the County had adequate policies, whether its personnel were properly trained, what protocols existed for detainees exhibiting signs of drug

intoxication, what information was available to policymakers, and whether the County had knowledge of comparable incidents are *factual questi*ons that have not yet been developed in this case, again, because discovery has not begun.

### A. The absence of allegations concerning prior incidents does not foreclose Plaintiff's "failure to train" and "obvious need" theory.

The R&R emphasizes that Plaintiff has identified only a single incident and has not alleged a persistent or widespread pattern of similar constitutional violations. ECF No. 14 at 9–10. Plaintiff respectfully submits, however, that this reasoning effectively treats the persistent-and-widespread-practice theory as the *only available method* of establishing deliberate indifference. This is not the case. The R&R itself recognizes that municipal liability may arise through *several distinct theories*, including an omission or failure to train that demonstrates deliberate indifference. The Supreme Court's decision in *City of Canton* recognizes that, in appropriate circumstances, the need for additional or different training may be so obvious that a municipality's failure to provide such training can itself support an inference of deliberate indifference.

The Fourth Circuit likewise has recognized this narrow exception. In *Estate of Jones*, the court explained that although a single incident ordinarily will not establish municipal liability, deliberate indifference may be shown where the need for more or different training is so obvious and the inadequacy of the existing training is so likely to result in constitutional violations that the policymakers can reasonably be said to have been deliberately indifferent. Plaintiff does not contend that the death of one detainee, standing alone, automatically establishes municipal liability. Rather, the point is that the Complaint alleges considerably more than the mere occurrence of an isolated constitutional violation. It alleges that County personnel were confronted with a known and immediate fentanyl-related medical risk; that the risk was sufficiently apparent to prompt an EMS response; that Defendants allegedly nevertheless failed to provide appropriate

medical intervention; and that, after placing Decedent into detention, Defendants allegedly failed to provide adequate monitoring, medical care, training, supervision, and safety protocols despite that known risk. ECF No. 1 ¶¶ 7–13, 17–19, 23–24.

Whether those allegations ultimately satisfy the demanding *City of Canton* standard is a question that can be tested through discovery and, if appropriate, at summary judgment. But the allegations are sufficient to permit the claim to proceed beyond the pleading stage.

**B. Johnson does not require dismissal because the R&R's reliance on a persistent and widespread practice theory does not resolve Plaintiff's distinct "failure to train" and omission theory.**

The R&R relies substantially upon *Johnson v. Baltimore City*, 163 F.4th 808, 823 (4th Cir. 2026), for the proposition that a plaintiff generally must allege a pattern of persistent and widespread constitutional violations to establish deliberate indifference. ECF No. 14 at 9–10. *Johnson*, however, does not eliminate the distinct *City of Canton* theory of municipal liability.

Plaintiff's allegations are not limited to an assertion that County officials knowingly permitted employees to engage repeatedly in unconstitutional conduct. Rather, Plaintiff alleges affirmative institutional deficiencies concerning training, supervision, medical care, monitoring, safety protocols, and the handling of illegal drugs within the detention facility. ECF No. 1 ¶¶ 17–19, 23–24. The theory is therefore that the County's alleged omissions and failures were themselves deliberately indifferent to an obvious risk to individuals in its custody.

At minimum, the distinction is significant at the pleading stage. The absence of allegations identifying previous incidents may be particularly difficult for a plaintiff to establish *before discovery* where the relevant information, including prior incidents within the detention facility, internal complaints, incident reports, training materials, policies and procedures, medical

protocols, and communications concerning known risks is maintained by the governmental defendant itself.

Accordingly, *Johnson* does not provide a basis for treating the absence of pleaded prior incidents as dispositive of Plaintiff's claim. The question is whether the allegations, taken as true and viewed in the *light most favorable to Plaintiff*, plausibly state a recognized theory of municipal liability. Plaintiff respectfully submits that they do.

**C. Mullen also does not warrant dismissal where this case is before the Court on a motion to dismiss and no evidentiary record has yet been developed.**

The R&R's reliance upon *Mullen v. Town of Sunset Beach*, 175 F.4th 466 (4th Cir. 2026), likewise does not support dismissal at this stage. *Mullen* addressed deliberate indifference in the context of *summary judgment*, after the parties had developed an evidentiary record. A motion to dismiss asks whether the allegations in the Complaint, accepted as true and viewed in Plaintiff's favor, plausibly state a claim for relief. Summary judgment, by contrast, asks whether the evidence developed through discovery establishes a genuine dispute of material fact. At the present stage of this case, there has been no discovery concerning the County's training practices, policies and procedures, prior incidents, internal investigations, medical protocols, monitoring practices, or the knowledge of the individuals responsible for those policies.

Thus, the absence of evidence presently establishing those matters cannot fairly be treated as evidence that those matters do not exist. Nor should Plaintiff be required, before discovery, to prove the evidentiary record that Defendants will ultimately be required to produce. The distinction is important here because much of the information relevant to municipal deliberate indifference is likely to be within Defendants' possession and control. Discovery may reveal the existence of prior incidents, complaints, policies, training materials, internal communications, medical procedures, or other information bearing directly upon whether the County knew of and disregarded a

substantial risk to detainees experiencing opioid-related medical emergencies. *Mullen* does not establish that Plaintiff's allegations are insufficient as a matter of law. Rather, it illustrates the type of fact-intensive inquiry that may appropriately be addressed *after discovery has produced an evidentiary record*. At this stage, the Court need only determine whether Plaintiff has plausibly alleged a recognized basis for municipal liability.

For these reasons, Plaintiff respectfully submits that the R&R's conclusion that the absence of alleged prior incidents requires dismissal is premature. The Complaint alleges a specific, factually detailed sequence involving a known fentanyl-related medical emergency, Defendants' subsequent custody of Decedent, and alleged institutional failures in training, supervision, monitoring, medical care, and safety protocols. Those allegations plausibly implicate the obvious-need theory recognized in City of Canton. Whether Plaintiff can ultimately prove deliberate indifference is a matter for discovery and, if appropriate, summary judgment—not a basis for dismissal before an evidentiary record has been developed.

## V. THE § 1983 CLAIMS SHOULD REMAIN IN THIS ACTION, AND THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER THE RELATED STATE-LAW CLAIMS.

The recommendation to dismiss Plaintiff’s state-law claims is dependent upon the dismissal of Plaintiff’s federal claims. Because, as stated above, Plaintiff has adequately alleged a § 1983 claim against Berkley County, there would be no basis *at this stage* for declining supplemental jurisdiction over Plaintiff’s related state-law claims. The negligence, wrongful death, and survival claims arise from the same nucleus of operative facts concerning Decedent’s detention, medical condition, treatment, and death, and therefore fall squarely within the Court’s supplemental jurisdiction under 28 U.S.C. § 1367. Plaintiff previously argued that the Court would retain supplemental jurisdiction so long as the § 1983 claims remained viable. ECF No. 10 at 7.

Plaintiff likewise preserves his objection to the R&R's conclusion that the Berkely County Sheriff's Department ("BCSD") is entitled to Eleventh Amendment immunity. Plaintiff previously argued that under *Galette v. New Jersey Transit Corp.,* 607 U.S. 509 (2026), the immunity analysis turns upon the State's formal legal relationship to the entity at issue, including whether the State itself bears any legal responsibility for the entity's judgments and liabilities. ECF No. 10 at 1-5. Plaintiff further argued that BCSD is a county department, funded and insured by Berkley County, rather than an entity for whose judgments the State of South Carolina bears formal liability. The R&R reaches a contrary conclusion based primarily upon *Cromer v. Brown,* 88 F.3rd 1315, 1332 (4th Cir. 1996)., and the Fourth Circuit's subsequent decision in *Williams v. Charleston County Sheriff's Office,* 2026 WL 2043182 (4th Cir. July 15, 2026). ECF No. 14 at 5-7. The R&R concludes that *Williams,* decided after *Galette,* reaffirmed the Fourth Circuit's prior determination that a South Carolina sheriff's office constitutes an arm of the State.

Respectfully, Plaintiff maintains his objection to that conclusion and preserves the issue for review. At minimum, Plaintiff asks the Court to distinguish the BCSD immunity question from the separate Monell question presented by Berkely County. The fact that the R&R recommends dismissal of BCSD on Eleventh Amendment grounds does not resolve whether Berkely County itself may be held liable under § 1983. Plaintiff maintains that those are distinct legal inquiries concerning distinct governmental entities.

Furthermore, the R&R recommends declining supplemental jurisdiction because it recommends dismissal of all federal claims. ECF No. 14 at 10-11. If the Court rejects that recommendation and permits Plaintiff's § 1983 claim against Berkely County to proceed, the premise for declining supplemental jurisdiction no longer exists. Again, Plaintiff's state law claims arise from the same nucleus of operative facts, and Plaintiff maintains that therefore those claims

form part of the same case or controversy for the purposes of § 1367. Accordingly, if the Court sustains Plaintiff's objection to dismissal of the § 1983 claim against Berkely County, Plaintiff respectfully requests that Court retain supplemental jurisdiction over the related state law claims and permit the action to proceed as to those claims as well.

## VI. ALTERNATIVELY IF THE COURT FINDS THE COMPLAINT TO BE INSUFFICIENTLY PLED, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

Even if the Court concludes that Plaintiff has not pled sufficient facts to state a viable § 1983 claim against Berkeley County, the dismissal of the action without an opportunity to amend would be premature. Again, Plaintiff has not yet had the benefit of discovery concerning the County's policies, training, supervision, monitoring practices, medical-care procedures, prior incidents, internal records, or knowledge concerning the risks associated with opioid-related medical emergencies. To the extent the Court determines that additional factual allegations concerning these matters are necessary to state a claim, Plaintiff respectfully requests an opportunity to amend his Complaint to provide those allegations. To revoke Plaintiff's right to bring forth a claim without the ability to acquire additional context to support that very claim would be to deny him the right to seek justice where justice is direly necessary.

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend when justice so requires. See *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006). The Fourth Circuit has likewise recognized that where a plaintiff is dismissed without prejudice, the plaintiff should be afforded to amend where the pleading deficiency may be curable. Britt v. DeJoy 45 F.4th 790 (4th Cir. 2022). Any perceived deficiency in the Plaintiff's allegations is *particularly* appropriate for amendment the case is quite literally in its earliest stage of litigation and no discovery has occurred. Accordingly, if the Court concludes that Plaintiff's present allegations are

insufficient, Plaintiff requests that the Court grant leave to amend rather than dismiss the action. Such relief would permit Plaintiff to cure while avoiding premature termination of claims arriving from potentially to most disastrous revocation of liberties, the resulting death of the Decedent, while in Defendants' custody.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court sustain Plaintiff's objections, decline to adopt the Report and Recommendation to the extent it recommends dismissal of Plaintiff's claims, and deny Defendants' Motion to Dismiss. At this preliminary stage, the Court's inquiry is whether the Complaint plausibly states a claim for relief, not whether Plaintiff has already developed evidence sufficient to defeat another standard. Plaintiff respectfully submits that the Complaint plausibly alleges municipal liability under § 1983 by *Monell*, including deliberate indifference arising from the alleged failures in training, supervision, monitoring, medical care, and safety protocols concerning a detainee presenting a known fentanyl-related medical risk. Accordingly Plaintiff requests that the §1983 claims be permitted to proceed and that the Court retain supplemental jurisdiction over the related state-law claims. Alternatively, to the extent the Court determines that additional factual allegations are necessary to support Plaintiff's claims, Plaintiff respectfully requests leave to amend the Complaint pursuant to Rule 15(a)(2).

**MORGAN & MORGAN**

s/***Jason Daigle***
Jason Daigle, Esquire - Fed Bar # 9588
4401 Belle Oaks Drive Suite 300
North Charleston, SC 29405
T: (854) 222-6088
F: (854) 222-6114
jason.daigle@forthepeople.com

**ATTORNEY FOR PLAINTIFF**

September 25, 2026
North Charleston, South Carolina